Robert B. Carey (*Pro Hac Vice Forthcoming*)
John M. DeStefano (*Pro Hac Vice Forthcoming*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Tel: (602) 840-5900
Fax: (602) 840-3012
Email: rob@hbsslaw.com
johnd@hbsslaw.com

**GOODY LAW GROUP, LLP**
Greyson Goody, Esq. (SBN 292527)
Jacob Armstrong, Esq. (SBN 339480)
52 Malaga Cove Plaza, Suite 305
Palos Verdes Estates, CA 90274
Tel: (310) 893-1983
Fax: (424) 427-6811
Email: greyson@goodylawgroup.com
jake@goodylawgroup.com

Attorneys for Plaintiff
Verner Bodden Bush

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VERNER BODDEN BUSH<br><br>Plaintiff,<br><br>v.<br><br>BLUE HILL SPECIALTY INSURANCE COMPANY; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No.<br>Assigned to:<br><br>**COMPLAINT FOR:**<br><br>**1. DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**2. BREACH OF CONTRACT**<br><br>**3. BAD FAITH BREACH OF INSURANCE CONTRACT**<br><br>**4. VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200**<br><br>JURY TRIAL REQUESTED |

# I. INTRODUCTION

1. When a person sustains serious injuries in an auto accident, their insurer must honor the terms of its auto insurance policy and promptly pay covered losses up to policy limits. The insurer must not misrepresent its obligations or mislead its insureds. A primary insurer must honor its duty to provide first-dollar coverage and not misrepresent that its position is secondary or excess to some other coverage or contractual benefit. A primary insurer must not delay or deny coverage without proper cause for doing so. A primary insurer must find coverage where it exists, must not place its own interests ahead of its insureds, and must fairly and promptly pay claims when coverage conditions are met.

2. In handling uninsured/underinsured (UM/UIM) claims, Blue Hill Specialty Insurance Company and its affiliates ("Blue Hill") violate these rules. As an insurance carrier for the Transportation Network Company (TNC) Uber Technologies, Inc., and its subsidiaries, Blue Hill has provided $1,000,000 in statutorily mandated UM/UIM coverage for Uber's drivers and passengers. By statute, this coverage is primary, meaning that the insurer has a statutory obligation to provide first-dollar indemnification. Public Utilities Code § 5433(b)(1). The mere existence of other primary insurance or contractual benefits applicable to a UM/UIM loss provides no basis for Blue Hill to delay or deny payment of a valid UM/UIM claim.

3. Despite these clear statutory and contractual obligations, Blue Hill evades its coverage obligations in two ways.

4. First, when an injured driver presents a UM/UIM claim, Blue Hill requires the driver to present their medical expenses for coverage by a separate insurer under a separate Occupational Accident Insurance (OAI) policy (also required by statute), and then refuses coverage for any medical expenses not paid by the OAI insurer.

5. Second, when an injured driver or passenger presents a UM/UIM claim and has separate UM/UIM coverage under a personal automobile policy, Blue Hill requires the insured to present their UM/UIM claim to the personal insurer before it will cover and pay any of the loss.

6. All of these practices breach Blue Hill's contractual and statutory obligations as a primary insurer and constitute bad faith. Blue Hill's primary coverage position requires first-dollar indemnification. By law, access to this coverage does not require claiming or exhausting any other coverage or contractual benefit. For Blue Hill to claim otherwise is a misrepresentation of pertinent policy terms and not a proper cause for Blue Hill to delay and deny coverage.

7. Blue Hill's systematic refusal to indemnify valid UM/UIM claims in the presence of other insurance (which inevitably contains a competing excess or "other insurance" clause) violates its contracts with its insureds and laws relating to the settlement of property and casualty claims. Blue Hill's actions also violate prohibitions on adjusting insurance claims in bad faith and constitute an unfair, unlawful, and deceptive business practice.

8. Plaintiff brings this class action on behalf of himself and all insureds who, from the earliest allowable time to the date judgment enters, made UM/UIM claims under a Blue Hill TNC policy and for whom Blue Hill failed to provide first-dollar indemnification based on the existence of an OAI policy or another UM/UIM policy.

## II. JURISDICTION & VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $1,000,000 in UM/UIM coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiff and the Defendant Blue Hill are citizens of different states. This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of

100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiff is a citizen of California, and Blue Hill is a citizen of Illinois (where it is incorporated and has its principal place of business).

10. Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims arising from the incident described herein occurred within this District.

11. This Court has personal jurisdiction over all Defendants because they do business in the State of California and in this county, and Defendants' business activities and contractual contacts in California give rise to the claims in this case. Defendant Blue Hill Insurance Company issued the UM/UIM policy to Uber Technologies Inc. and its subsidiaries under which Plaintiff was insured.

## III. PARTIES

12. Plaintiff Verner Bodden Bush ("Plaintiff" or "Verner") is a resident and citizen of California and Los Angeles County. At all times relevant to this Complaint, by way of his use of the Uber platform as an Uber driver, Plaintiff was an "insured' under a written Business Automobile Policy purchased by Uber and issued by Blue Hill, bearing policy number 01230478 ("the Blue Hill Policy"). The Blue Hill Policy provides $1,000,000 in UM/UIM coverage while a passenger is on board.

13. Plaintiff was also an "insured" under GEICO General Insurance Company policy number 6048-94-87-95 ("the GEICO Policy") issued to him and his wife Esly Bodden Lopez, which provided UM/UIM coverage of $25,000 per person and $50,000 per incident for two vehicles, including a 2013 Toyota Prius owned by them.

14. Blue Hill Specialty Insurance Company is an insurance company incorporated under the laws of Illinois, with its principal place of business located in Chicago, Illinois. At all times relevant to this Complaint, Blue Hill was authorized to and was doing substantial business selling surplus lines insurance in the State of

California and the County of Alameda. Blue Hill is a wholly owned subsidiary of Progressive Commercial Holdings, Inc.

15. The remaining Doe Defendants (collectively with Blue Hill Specialty Insurance Company, "Blue Hill" or "Defendants") are insurance companies affiliated with Blue Hill and/or Progressive Commercial Holdings, Inc. selling TNC UM/UIM insurance covering Uber drivers and passengers in California and, upon information and belief, they rely upon the same claims handling operations, procedures, and personnel as Blue Hill. Moreover, the remaining Doe Defendants provide coverage under a common statutory scheme requiring Uber as a TNC to ensure that all drivers and passengers receive $1,000,000 in UM/UIM coverage.

16. Whenever it is alleged in this Complaint that Blue Hill did any act or thing, it is meant that Blue Hill and its agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of Blue Hill or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Blue Hill and its officers, agents, servants, employees or representatives. Specifically, Blue Hill is liable for the actions of its affiliates, officers, agents, servants, employees, and representatives.

## IV. GENERAL ALLEGATIONS

### A. California's statutory insurance requirements for transportation network companies like Uber.

17. Uber, Inc. is the largest Transportation Network Company (TNC) in the United States, facilitating hundreds of millions of rides each year through its digital platform. In 2025, Uber reported $49.610 billion in annual revenue and completes upwards of 35 million trips per day. Uber reports over 180 million active riders and over 30,000 employees, with operations spanning nearly every major U.S. metropolitan area.

18. Because TNCs operate their billion-dollar enterprises on public roadways, California law imposes strict insurance requirements to ensure their financial responsibility and protect the safety of the public. These requirements reflect a clear policy choice: When corporations profit from thousands of vehicles on California roads, they must also shoulder the responsibility of ensuring those vehicles carry robust primary insurance protection for the people operating and riding in them. The intent of the Legislature has been to ensure that the enormous profits generated by rideshare platforms do not come at the expense of the safety and financial security of the Californians who make those profits possible.

19. One of the most important insurance requirements imposed on Uber is codified in Public Utilities Code § 5433(b)(2), mandating (until 2026) that TNCs maintain $1,000,000 in <u>uninsured and underinsured motorist</u> (UM/UIM) coverage for the protection of Uber's drivers and passengers injured during a trip arranged through the TNC platform.[1] The statute expressly states, "[t]ransportation network company insurance shall be primary[.]" *Id*. § 5433(b)(1).

20. UM/UIM coverage protects those injured in collisions with drivers who either have no automobile liability insurance or have insufficient insurance to compensate for the injuries.[2]

21. Under California law, the purpose of UM/UIM coverage is "to provide the insured with the same insurance protections he or she would have enjoyed had the tortfeasor carried liability limits equal to insured's underinsured motorist limits." The $1,000,000 in primary UM/UIM coverage required by § 5433 allows Uber

---

[1] Prior to 2026, the statute mandated $1,000,000 in coverage. As of January 1, 2026, this amount was reduced to $60,000 per person and $300,000 per accident per the passage of SB 371 (2025). Plaintiff's claim and the claims of most class members arise under the $1,000,000 limit.

[2] Nearly 20% of all drivers in California are uninsured, while approximately 6% of drivers are underinsured, meaning their policy limits are too low to cover damages from even a moderate crash.

drivers and passengers to receive the same financial protections they would have enjoyed had the tortfeasor carried liability limits equal to the $1,000,000 limit mandated by PUC § 5433(b)(2).

22. To provide this UM/UIM coverage, Uber contracts with Defendant Blue Hill Insurance Company, a wholly owned subsidiary of Progressive Commercial Holdings, Inc., which provides commercial rideshare insurance for Uber in California and other states.

**B. Proposition 22 and occupational accident insurance.**

23. In 2020, California voters approved Proposition 22, known as the "Protect App-Based Drivers and Services Act," codified in Business and Professions Code § 7448 et seq. Resolving a yearslong battle over the employment classification of rideshare drivers, Proposition 22 permits TNCs to classify drivers as independent contractors rather than employees, excluding drivers from California's comprehensive state workers' compensation regime.

24. Instead of mandating participation in a comprehensive workers' compensation system, Proposition 22 requires Transportation Network Companies to provide Occupational Accident Insurance ("OAI") for their app-based drivers. Business & Professions Code § 7455. OAI is a private insurance policy for workplace injuries. OAI provides coverage for medical expenses and lost income that result from injuries sustained while a driver is using the Uber app. Generally, OAI premiums are a fraction of workers' compensation premiums and OAI coverage is more restrictive than workers' compensation coverage, providing narrower benefits which are nearly always at severely discounted reimbursement rates.

25. Unlike worker's compensation policies, OAI policies do not provide an exclusive remedy for medical expenses and lost income, nor do OAI policies displace civil remedies against a tortfeasor. Contractual OAI benefits under BPC § 7455 were never intended to replace or diminish the $1,000,000 in primary UM/UIM coverage mandated by Public Utilities Code § 5433. OAI was intended as an

additional safeguard for lost wages and medical bills of drivers in rideshare accidents, not as a substitute for statutory UM/UIM protection. Although California law allows a UM/UIM insurer to offset benefits that have actually been "provided" under OAI, BPC § 7455(e), nothing in the law permits Blue Hill to delay UM/UIM coverage until a claim for OAI benefits is made, condition UM/UIM coverage on a claim for OAI benefits, or offset amounts beyond benefits which are actually paid under an OAI policy.

26. BPC § 7455(e) merely states that any benefits "provided" under OAI "shall be considered amounts payable under a workers' compensation law or disability benefit" for the purpose of calculating what the UM carrier must pay. This provision means that any benefits actually provided under OAI are to be treated as if they were workers' compensation payments for the limited purpose of avoiding double recovery. It does not transform OAI into a workers' compensation system, nor does it authorize insurers to delay, condition, or reduce UM/UIM coverage based on benefits that are merely "payable," expected, or available if the insured chooses to seek them.

27. Thus, Blue Hill may offset ***only the amounts actually paid*** under OAI from its UM/UIM obligations.

28. To provide OAI coverage, Uber contracts with

29. Upon information and belief, Uber does not contract with any other insurance carrier to provide OAI coverage.

**C. Defendants improperly delay and deny UM/UIM benefits, misrepresenting primary UM/UIM coverage as secondary to OAI or other UM/UIM coverage.**

30. The UM/UIM coverage issued by Blue Hill is ***required by statute to be primary*** and thus available independent of any other insurance that may be applicable to the same loss. Despite this clear statutory directive, Blue Hill has systematically, unilaterally, and unlawfully reclassified its primary UM/UIM

coverage as ***secondary*** or ***excess*** through internal claims practices and policy interpretations.

31. As a routine and standard practice and procedure, Blue Hill routinely violates California law by forcing drivers to pursue OAI benefits (an independent contractual benefit) before accessing the primary UM/UIM coverage afforded by contract and statute.

32. Similarly, as a routine and standard practice and procedure, Blue Hill Insurance Company routinely violates California law by forcing drivers and passengers to pursue UM/UIM benefits through their personal auto insurance carriers before accessing primary UM/UIM coverage afforded by contract and statute.

33. So doing, Blue Hill improperly transforms separate sources of primary protection (OAI and/or personal UM/UIM coverage) into fictitious and misleading prerequisites for Blue Hill's primary UM/UIM coverage, contradicting both the text and purpose of the statutes that govern rideshare insurance and UM/UIM coverage in California.

34. Under Blue Hill's uniform and standard practice, Blue Hill instructs injured Uber drivers and passengers to exhaust UM/UIM coverage under their personal auto policies before Blue Hill will consider their claims for UM/UIM benefits, effectively treating co-primary auto policies as a prerequisite rather than a supplement to primary UM/UIM coverage. This practice violates the plain text and purpose of Public Utilities Code § 5433 and the contractual obligation of primary UM/UIM coverage that Blue Hill knowingly assumed.

35. Under Blue Hill's uniform and standard practice, Blue Hill also instructs injured Uber drivers to exhaust the OAI claims process before Blue Hill will consider their claims for UM/UIM benefits, effectively treating OAI as a prerequisite rather than a supplement to primary UM/UIM coverage. This practice violates the plain text and purpose of Public Utilities Code § 5433, Business and Professions Code § 7455,

and the contractual obligation of primary UM/UIM coverage that Blue Hill knowingly assumed.

36. OAI is not "workers' compensation," and unlike the statutory workers' compensation scheme – which provides guaranteed benefits but displaces all tort remedies – OAI coverage is not mandatory, not exclusive, and not subject to the same regulatory structure.

37. Blue Hill's evasion of its coverage responsibilities does not end with advising claimants to look elsewhere. Even in instances where an injured driver presents an OAI claim, Blue Hill has a standardized, uniform practice of misrepresenting and failing to pay the primary UM/UIM benefits it owes, taking the position that its UM/UIM coverage applies only to "general damages"—that is, pain, suffering, and other non-economic harm. In other words, Blue Hill has a standardized, uniform practice of asserting that UM/UIM coverage excludes medical special damages (medical expenses) entirely.

38. California's principles of statutory and contractual interpretation prohibit insurers from incorporating policy language that provides less protection than required by statute. When the Legislature mandates specific minimum coverages, those statutory requirements set a floor, not a ceiling. Nonetheless, Blue Hill has included language in its standard form UM/UIM policy that misrepresents its primary coverage obligation, stating, "The Limits of Liability available under this Part III shall be reduced by: ... (4) all sums paid, ***payable, or that should apply***, because of bodily injury under any: a. occupational accident insurance," treating the OAI policy as the equivalent of a workers' compensation policy, which it is not. This clause is ineffective and misleading because it purports to narrow, unlawfully, the coverage required under California law. California law permits an insurer to offset only those benefits actually "provided"—that is, benefits actually paid—under an OAI policy; an insurer may not offset benefits that are merely potentially owed. BPC § 7455(e).

39. Blue Hill has no reasonable basis for its self-serving position, which unlawfully narrows the scope of UM/UIM coverage required by California insurance regulations and deprives drivers of the full $1,000,000[3] in primary UM/UIM protection that they are guaranteed under Public Utilities Code § 5433.

40. Blue Hill has adopted these standardized, uniform practices for the sole purpose of reducing its own financial exposure under California's mandatory and primary UM/UIM coverage, at the expense of the primary insureds that it has promised to indemnify at dollar one. By unlawfully funneling claimants through other UM/UIM and OAI policies first, Blue Hill breaches its contractual and statutory obligation to provide first-dollar coverage as a primary insurer. By then denying coverage for medical expenses that were not paid by OAI, Blue Hill treats deeply discounted payments by a separate OAI carrier as a substitute for the primary UM/UIM coverage and benefits Blue Hill is required to provide under its contract and California law.

**D. Blue Hill knowingly violates the law and contract with an intent to deprive injured insureds of their policy benefits.**

41. Blue Hill's decisions to delay and deny UM/UIM benefits based on the existence of OAI or other UM/UIM coverage have no reasonable basis in the law. Counsel for accident victims have repeatedly confronted Blue Hill with the governing law requiring primary coverage. In response, Blue Hill has often responded by reversing course—agreeing to consider medical expenses that it had previously rejected and processing the UM/UIM claim without further delay. This selective compliance reveals that Blue Hill is aware at an institutional level that its assumption of a secondary or excess position and its refusal to cover medical expenses have no reasonable basis in the law. Nonetheless, Blue Hill continues with

[3] Or, post-2025, $60,000 per person and $300,000 per accident per the passage of SB 371 (2025).

its standard practice of pretending that its UM/UIM coverage is excess or secondary to other insurance to deter and underpay claimants.

42. The result is a calculated, opportunistic claims process. Blue Hill's routine practice is to refuse coverage or payment knowing that some claimants will accept these representations without challenge. But when Blue Hill is confronted by knowledgeable counsel, it often reverses position and processes the claim correctly. This "wait and see" approach reflects a deliberate strategy to test whether claimants will comply and allow Blue Hill to unlawfully delay claims and minimize payouts. As a result, thousands of claims go unpaid or underpaid in violation of the contract and California law.

43. This pattern of conduct demonstrates knowing and intentional misapplication of California's insurance statutes. Rather than administering UM/UIM coverage in good faith, Blue Hill exploits its superior position and the complexity of overlapping insurance schemes to deprive injured drivers and passengers of full statutory protection.

## V. FACTUAL BACKGROUND

44. On December 7, 2022, at 8:42am, Plaintiff was operating his 2013 Toyota Prius in the far-right lane on La Cienega Boulevard. Plaintiff was registered as a driver on the Uber rideshare platform and was transporting a passenger who had hailed him through the Uber rideshare platform.

45. Carlos Jared Carreno ("Carreno") was driving a 2000 Mazda 626 LX in the opposite direction on La Cienega Boulevard attempting to make a sudden lefthand turn onto Horner Street through traffic.

46. Plaintiff's vehicle struck Carreno's vehicle ("the Collision").

47. As a result of the Collision, Plaintiff sustained serious injuries, including severe spine injuries which required Plaintiff to undergo cervical disc replacement surgery.

48. Carreno was negligent in his actions leading to and including the Collision. His negligence caused the Collision.

49. At the time of the accident, Carreno had auto liability insurance applicable to bodily injury from the Collision with limits of only $15,000 per person, $30,000 per accident.

50. Carreno had no other auto liability insurance applicable to the Collision.

51. Carreno's insurer tendered, and Plaintiff accepted, the $15,000 bodily injury limit under his automobile policy.

52. Carreno's auto liability insurance limits are inadequate to compensate Plaintiff for his injuries.

53. Carreno, therefore, was underinsured as to Plaintiff.

54. At the time of the collision, Plaintiff was an insured under the Blue Hill Policy issued to Uber. The Blue Hill Policy provides $1,000,000 in UM/UIM coverage while a passenger is on board.

55. At the time of the collision, Plaintiff was also a named insured and therefore a covered person under the GEICO Policy issued to him and his wife personally, which provided UM/UIM coverage of $25,000 per person and $50,000 per incident.

56. On December 8, 2022, Plaintiff, through his attorneys, notified Blue Hill (through Progressive Insurance, Blue Hill's claims administrator) of the accident.

57. On June 12, 2024, Blue Hill wrote to Plaintiff refusing to proceed with arbitration of the UM/UIM claim, stating that Plaintiff "appears to have available benefits through his Occupational Accident Insurance ("OAI") coverage," and that Plaintiff "may also have insurance benefits or coverage with his own personal automobile policy in place with Geico Insurance Company."

58. Blue Hill quoted provisions in the policy that Blue Hill falsely represented as requiring Plaintiff to seek benefits under any applicable OAI policy before pursuing UM/UIM coverage:

> Part III, Exclusion 2, states:
>
> "Coverage will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws: a. workers' compensation law; or b. disability benefits law."
>
> Part III, Limits of Liability states:
>
> "The Limits of Liability available under this Part III shall be reduced by: . . . 4. all sums paid, payable, or that should apply, because of bodily injury under any: a. occupational accident insurance, but only with respect to bodily injury to the TNC driver."

59. As outlined above, any requirement that Plaintiff pursue coverage from other sources before receiving OAI is contrary to California law, which expressly states that UM/UIM coverage issued to TNCs such as Uber is and must be primary coverage. Insurance provisions to the contrary are void as against public policy. Provisions referring to OAI coverage do not discharge USAA's responsibilities to defend and indemnify as a primary insurer.

60. Rather than adjust the UIM claim on a primary basis or proceed to arbitrate the claim, Blue Hill insisted that OAI first be exhausted.

61. On January 14, 2025, Plaintiff (through his attorneys) notified Blue Hill that Mr. Carreno had tendered his policy limit of $15,000. Plaintiff further notified Blue Hill that because the $15,000 payment is not enough to compensate for the injuries sustained by Plaintiff, he would be pursuing a UIM claim and requested arbitration. Plaintiff demanded $984,999.00—the remainder of the $1,000,000 policy limits—under the Blue Hill Policy on January 27, 2025, June 16, 2025, and September 1, 2025.

62. On January 14, 2025, Blue Hill responded to Plaintiff reiterating that Plaintiff's UIM claim was not yet "at issue" because Plaintiff had not exhausted OAI benefits and would need to submit proof of OAI payments to Blue Hill.

63. Pursuant to Blue Hill's instructions, Plaintiff submitted his medical bills resulting from the accident – totaling over $155,000 – to the OAI carrier, Intact Insurance. Intact Insurance issued checks to Plaintiff totaling less than $4,200, leaving Plaintiff undercompensated by over $150,000 for his medical bills.

64. On September 3, 2025, Blue Hill informed Plaintiff that the Blue Hill UM/UIM policy does not pay for Plaintiff's medical expenses, pursuant to Part III, Limits of Liability section of the policy:

> Part III, Limits of Liability states:
>
> "The Limits of Liability available under this Part III shall be reduced by: . . . 4. all sums paid, payable, or that should apply, because of bodily injury under any: a. occupational accident insurance, but only with respect to bodily injury to the TNC driver."

65. On January 22, 2026, Blue Hill again informed Plaintiff that it is Blue Hill's official policy that (1) OAI benefits must be exhausted before triggering Blue Hill's UIM policy, and (2) Blue Hill's UIM policy only covers general damages (i.e., pain and suffering) and does not cover medical expenses.

66. Blue Hill required Plaintiff to submit his medical bills to the OAI carrier first, and then used the OAI carrier's minimal payments as the basis to refuse paying Plaintiff's remaining medical expenses under Blue Hill's UM/UIM coverage.

67. After Intact paid Plaintiff less than $4,200 on more than $155,000 in accident-related medical bills, Blue Hill took the position that it owed nothing further for medical expenses because, according to Blue Hill, its UM/UIM policy states that the policy "shall be reduced by… all sums paid, payable, or that should apply… under any occupational accident insurance."

68. On February 4, 2026, Plaintiff demanded $675,000.00 given that Blue Hill represented that its policy does not pay for medical expenses. On February 12, 2026, Plaintiff reduced the amount of his demand to $500,000.

69. On March 4, 2026, counsel for Blue Hill clarified by phone that Blue Hill believes the UM/UIM coverage under the Blue Hill Policy applies only to

general damages, but Blue Hill will not settle without a release of all claims under the Blue Hill Policy.

70. The Blue Hill Policy under which Plaintiff was insured is Blue Hill's standard form policy in California for Uber rideshare vehicles.

71. Blue Hill has adopted and systematically adopts the position that its coverage is conditioned on resolution of both OAI and personal-policy UM/UIM claims even though this position is contrary to the language of its insurance policies and the law of California.

72. Blue Hill has adopted and systematically adopts the position that its coverage pays "general damages" only and does not pay medical expenses. Blue Hill enforces that position by requiring insureds to submit medical bills to the OAI carrier first and provide proof of OAI payments before Blue Hill will move forward on the UM/UIM claim; then Blue Hill uses the limited OAI payments as the basis to refuse paying the remaining medical bills under its UM/UIM coverage.

73. Blue Hill misrepresented the nature of UIM coverage and delayed the processing and payment of Plaintiff's UIM claim willfully, unreasonably, and without proper cause. Defendants, therefore, have denied Plaintiff benefits to which he is entitled under the form policy and California law.

74. Blue Hill knew or should have known that its policy interpretation and failures pay primary UIM benefits violates binding California law. Blue Hill had no reason to believe that its policy did not afford primary coverage.

75. Blue Hill's failures are both unreasonable and in conflict with well-established California law. Blue Hill's coverage position is directly contrary to the interests of its insureds.

76. Blue Hill's failures also violate its duty to find coverage, to conduct a reasonable investigation of the claim, and disclose and not to misrepresent pertinent policy provisions including the primacy of statutorily mandated UM/UIM coverage.

77. Blue Hill acts in bad faith by failing to adopt and implement reasonable standards for prompt investigation and processing of claims arising under insurance policies.

78. Blue Hill has acted with at least reckless disregard of the rights of others by manipulating its interpretation of the policy to settle the UM/UIM claims of rideshare drivers and passengers. Blue Hill has devised a coverage position that is unfair, misleading, deliberately inconsistent, and calculated to confuse and deceive consumers and their advocates in the settlement process.

79. Blue Hill's unreasonable and unlawful refusal to pay UM/UIM benefits as primary has led to underpaying Plaintiff's UM/UIM claim, as well as the claims of many others, and thus Blue Hill is paying millions of dollars less for UM/UIM claims than its insureds are entitled to under the terms of their standardized policies.

## VI. CLASS ACTION ALLEGATIONS

80. Plaintiff brings this action pursuant to Code of Civil Procedure § 382 on behalf of himself and similarly situated Class Members. The claims asserted herein satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation.

81. The Class consists of the following:

> All persons insured under one or more transportation network company insurance policies providing for UM/UIM coverage and issued in California by the Defendants, who made a claim under that policy, and for whom Defendant issued a written communication identifying OAI coverage or a separate UM/UIM policy as a source of benefits for the claim, and who received benefits under an OAI policy or a separate UM/UIM policy.

82. While the exact number of Class Members cannot yet be determined, the Class likely includes thousands of Californians, including both Uber drivers and passengers. In 2024, more than 44 million people used the Uber platform in the United States. Uber also reports having over two million drivers across its service

area. These figures strongly suggest the Class is sufficiently large such that joinder of all members is impracticable. The exact identities and number of Class Members can be determined from Defendants' records, claims files, and policy databases.

83. There are questions of law and fact common to the Class, including, but not limited to, the following:

a. Whether Defendants breached its policies by conditioning payment of UM/UIM benefits on the pursuit of OAI or separate UM/UIM benefits;

b. Whether Defendants breached its policies by restricting UM/UIM coverage to "general damages";

c. Whether Defendants lacked a reasonable basis in law to condition payment of UM/UIM benefits on the pursuit of OAI or UM/UIM benefits under a separate policy;

d. Whether Defendants lacked a reasonable basis in law to restrict UM/UIM coverage to "general damages";

e. Whether, in the course of the foregoing conduct, Defendants misrepresented applicable policy provisions and statutory rights to insureds;

f. Whether, in the course of the foregoing conduct, Defendants concealed from or failed to disclose to its insureds applicable policy benefits;

g. Whether, through the foregoing conduct, Defendants acted in bad faith;

h. Whether, through the foregoing conduct, Defendants engaged in unlawful claims settlement practices under California Insurance Code § 790.03(h);

i. Whether, through the foregoing conduct, Defendants violated the Unfair Competition Law, Bus. & Prof. Code § 17200;

j. Whether, through the foregoing conduct, Plaintiff and Class Members were damaged;

k. Whether Defendants' conduct is of a continuing nature;

l. Whether Plaintiff and Class Members are entitled to injunctive relief;

m. Whether Defendants should be required to review, reopen, and readjust previously closed claims to identify and compensate insureds who were underpaid or misled as a result of these unlawful practices;

n. Whether Plaintiff and the Class are entitled to a declaration that Defendants' policy language and practices are unlawful and unenforceable under California law;

o. Whether Defendants' conduct was willful, malicious, fraudulent, or oppressive, justifying an award of punitive damages; and

p. Whether Plaintiff and the Class are entitled to an award of attorney's fees.

84. Plaintiff has the same interests in this matter as all other Class Members, and his claims are typical of those of all Class Members. Plaintiff's claims are coincident with and not antagonistic to those of other Class Members he seeks to represent.

85. Plaintiff and Class Members have been harmed by Defendants' common course of conduct as outlined herein. The harm to each Class Member was directly caused by Defendants' uniform misrepresentations, unlawful policy interpretations, and unfair claims practices.

86. Plaintiff seeks to certify the Class under Code of Civil Procedure § 382 to recover compensatory damages. In the alternative, Plaintiff seeks to certify the Class to obtain equitable relief on behalf of all Class Members, including but not limited to (1) an injunction requiring Defendants to readjust each UM/UIM claim using lawful standards and procedures and to place each Class Member in the position they would have occupied had Defendants properly and promptly adjusted their claims and paid all benefits due under the applicable policy; and (2) disgorgement of any amounts retained by Defendants as a result of their unlawful conduct.

87. Class certification is appropriate because:

a. The questions of law or fact common to Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy;

b. Each Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, among other things, equitable remedies with respect to the Class as a whole;

c. Resolution of a key fact issue common to the Class – did Defendants' conduct constitute bad faith under California law – will materially advance the litigation.

88. Absent a class action, most Class Members will remain unaware of their rights and/or find the cost of pursuing individual claims prohibitive. They will thus have no effective remedy. Class treatment of these common questions of law and fact conserves the resources of the courts and litigants and promotes consistency and efficiency in adjudication. Defendants have concealed, failed to disclose, and/or misled Class Members about their rights, and those Class Members will remain ignorant of their potential claims absent court-supervised notice.

89. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions involving the insurance industry. Plaintiff and his counsel are committed to vigorously pursuing this action on behalf of all Class Members and have the financial resources to do so. Neither Plaintiff nor his counsel has any interests adverse to the Class.

/ / /

/ / /

/ / /

/ / /

## VII. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

90. Plaintiff incorporates by reference all prior allegations in this Complaint as though fully set forth herein.

91. Plaintiff and each Class Member are insureds under one or more automobile insurance policies issued in California by Defendant Blue Hill Insurance Company providing primary uninsured/underinsured motorist ("UM/UIM") coverage ("the Policy" or "Policies"). Each Policy was issued pursuant to Uber's obligations as a Transportation Network Company under Public Utilities Code § 5433(b)(2).

92. Under these UM/UIM Policies, Defendants must "pay all sums the insured is legally entitled to recover as compensatory damages" from the owner or operator of an uninsured or underinsured motor vehicle, up to the limits required by law, namely, $1,000,000 for Policies such as Plaintiff's issued prior to January 1, 2026. These contractual obligations must conform to and cannot abridge the statutory UM/UIM coverage mandated by California law.

93. There is no authority which allows Defendants to (a) delay or condition payment of UM/UIM benefits on the insured's pursuit or exhaustion of Occupational Accident Insurance ("OAI") benefits, (b) restrict UM/UIM coverage to "general damages" while excluding medical expenses, or (c) require insureds to seek or exhaust personal automobile UM/UIM coverage before Uber's policy applies. Each of these limitations is contrary to the plain terms of the Policies, California statutes, and governing public policy.

/ / /

/ / /

/ / /

/ / /

/ / /

94. Nevertheless, Defendants have adopted and applied internal corporate-level policies and practices that unlawfully interpret the Policies to impose such limitations and conditions, thereby breaching their contractual obligations.

95. Each of these interpretations unlawfully narrows the scope of coverage required by Public Utilities Code § 5433 and Insurance Code § 11580.2(a)(1), and violates the contractual promise to provide full primary UM/UIM protection to Uber drivers and passengers. Any Policy provision purporting to authorize such conduct is void and unenforceable under California law.

96. In breach of its contractual obligations, Defendants denied, delayed, reduced, or conditioned payment of Plaintiff's and Class Members' UM/UIM benefits based on these unlawful policy interpretations.

97. On information and belief, these denials reflected Defendants' standardized, company-wide claims practices intentionally designed to minimize UM/UIM payments, manufacture an unlawful offset for medical expenses, and reduce financial exposure under Uber's TNC insurance program.

98. As a direct and proximate result of Defendants' breach of their obligations under the Policies and California law, Plaintiff and Class Members have suffered economic and non-economic damages, and other damages as set forth in the Prayer of this Complaint.

## SECOND CLAIM FOR RELIEF

## BAD FAITH

99. Plaintiff incorporates by reference all other allegations in this Complaint as if fully set forth herein.

100. On information and belief, and as alleged more specifically elsewhere in this Complaint, Defendants' wrongful conduct claim reflected Defendants' corporate policies and practices with respect to the handling and payment of claims for

UM/UIM benefits ("Benefits") required by California Public Utilities Code 5433(b)(2).

101. Each of Defendants' wrongful acts was committed knowingly and/or performed with such frequency as to indicate a general business practice.

102. Inherent and implied in each UM/UIM policy issued by Defendants is a covenant of good faith and fair dealing owed to Plaintiff. *See Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 818, 169 Cal. Rptr. 691, 695, 620 P.2d 141, 145 (1979).

103. The scope of Defendants' duty of good faith and fair dealing is informed by the fact that insurance contracts are "unique in nature and purpose," since the "insured does not enter an insurance contract seeking profit, but instead seeks security and peace of mind through protection against calamity." *Progressive W. Ins. Co. v. Superior Court*, 135 Cal. App. 4th 263, 277 (2005) (internal citations omitted).

104. Insurers are therefore subject to "special obligations, consonant with these special purposes, seeking to encourage insurers promptly to process and pay claims." *Id.*

105. Among other things, Defendants had a duty:

a. Not to misrepresent to Plaintiff and Class Members pertinent facts and/or policy provisions relating to coverages at issue, *see Cal. Ins. Code* § 790.03(h)(1);

b. To adopt and implement reasonable standards for the prompt investigation and processing of Claims, *see Cal. Ins. Code* § 790.03(h)(3);

c. To attempt in good faith to effectuate prompt, fair, and equitable settlements of Claims in which liability has become reasonably clear, *see Cal. Ins. Code* § 790.03(h)(5);

d. To refrain from compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less

than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered. *see Cal. Ins. Code* § 790.03(h)(6);

e. Not to "deny coverage based on unduly restrictive policy interpretations or standards known to be improper," *Progressive*, 135 Cal. App. 4th at 277; and

f. Not to "unreasonably delay the processing or payment of Claims," *id.*

106. Through the conduct alleged in this Complaint, Blue Hill violated these and other duties to Plaintiff and Class Members, including by violating multiple provisions of the Unfair Insurance Practices Act, Ins. Code § 790.03 ("UIPA") and its implementing regulations, California Fair Claims Settlement Practice Regulations, Title 10, Chapter 5, Subchapter 5, § 2595.1, *et seq.* (the "Regulations").

107. Defendants' failure and refusal to pay Benefits owed was unreasonable and without proper cause. Defendants knew, or in the exercise of good faith reasonably should have known, that Plaintiff and Class Members suffered losses compensable under the policies, and that by their actions, Defendants were depriving insureds of Benefits they were contractually and statutorily entitled to receive.

108. Moreover, Defendants' delay, denial, and underpayment of Claims were based on interpretations of policy language and California statutes that Defendants knew or should have known were unlawful, unduly restrictive, or otherwise improper. These include:

a. Defendants' position that OAI must pay first or must be exhausted before UM/UIM coverage applies or is the sole primary policy, in violation of *Pub. Util. Code* § 5433(b)(2);

b. Defendants' position that UM/UIM coverage applies only to "general damages," excluding medical expenses; and

c. Defendants' position that claimants must first seek coverage under their own personal auto policies, despite knowing that Uber's UM/UIM coverage is required to be primary.

109. In addition to their unreasonable failure to pay Claims, Defendants acted in bad faith throughout the process of adjusting those Claims, including by:

a. Misrepresenting pertinent policy provisions and facts relating to the coverages at issue;

b. Failing to identify, acknowledge, disclose, and pay benefits and coverages that apply to the claim, in violation of in violation of *Cal. Code Regs.*, tit. 10, § 2695.4(a);

c. Failing to conduct and diligently pursue a thorough, fair, and objective investigation of Claims, in violation of *Cal. Code Regs.*, tit. 10, § 2695.7(d); and

d. Persisting in seeking unnecessary or irrelevant information in violation of *Cal. Code Regs.*, tit. 10, § 2695.7(d).

110. As a direct and proximate result of Defendants' bad faith conduct, Plaintiff and Class Members were deprived of insurance benefits to which they were entitled.

111. Defendants' conduct was fraudulent, willful, malicious, and oppressive, entitling Plaintiff and Class Members to an award of punitive damages.

## **THIRD CAUSE OF ACTION**

## **(VIOLATION OF THE BUSINESS AND PROFESSIONS CODE § 17200)**

112. Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

113. California Business and Professions Code § 17200 (the "Unfair Competition Law") prohibits acts of "unfair competition" including and "unlawful, unfair or fraudulent business act of practice."

114. Blue Hill violated the Unfair Competition Law by violating the California Insurance Code (the “Code”) § 790.03(h).

115. Blue Hill violated the Unfair Competition Law when it denied Class members coverage by misrepresenting itself as a secondary or excess carrier.

116. Blue Hill violated the Unfair Competition Law by informing Plaintiff and Class members that they must exhaust OAI or personal UM/UIM insurance in order to receive UM/UIM benefits under the Blue Hill policy.

117. Blue Hill violated the Unfair Competition Law by limiting UM/UIM coverage to general damages where the insured had made an OAI claim.

118. Blue Hill acted without conducting a reasonable investigation into the existence and terms of other coverage or establishing standards for such an investigation before delaying, underpaying, and/or denying coverage.

119. Blue Hill violated the Unfair Competition Law when it did not effectuate prompt, fair, and equitable settlements of Class members’ claims when liability had become reasonably clear.

120. Blue Hill violated the unfair competition law when it breached the covenant of good faith and fair dealing in settling total loss claims as described above.

121. Blue Hill’s actions violate the unlawful prong of section 17200 because they violate California’s express statutory and regulatory requirements regarding insurance claims handling, including those set forth above.

122. Blue Hill’s actions violate the unfair prong of section 17200 because the acts and practices set forth above, including Blue Hill’s use of an invalid insurance policy term, Blue Hill’s misrepresentation of the benefits under insurance policies, and Blue Hill’s failure to adequately investigate UM/UIM claims, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices. Blue Hill’s actions also violate the unfair prong because they constitute a systematic breach of consumer contracts.

123. Blue Hill has violated the fraudulent business practices prong of section 17200 because the misrepresentations and omissions regarding the insurance policies and Plaintiff's rights under the policy, including without limitation purporting to be an "excess" carrier where Blue Hill provides primary coverage, were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

124. To date, Blue Hill continues to violate the Unfair Competition law by breaching its insurance contracts and the covenant of good faith and fair dealing as described previously.

## VIII. DEMAND FOR JURY TRIAL

125. Plaintiff demands a jury trial pursuant to Cal. Civ. Proc. Code § 631 and Section 16 of Article I of the California Constitution for all actions so triable.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. An order appointing Plaintiff as class representative and Robert Carey of Hagens Berman as class counsel and certifying each Claim for Relief under Rule 23(b)(3), Rule 23(b)(2), and/or Rule 23(c)(4).

B. Judgment in favor of Plaintiff and the Class on their Claims for Relief.

C. Class-wide compensatory damages, including but not limited to all recoverable economic damages and non-economic damages and attorney's fees, in an amount to be proven at trial.

D. Attorney's fees pursuant to any applicable authority.

E. Costs incurred herein.

F. Pre-judgment and post-judgment interest, as provided by law.

G. Punitive damages in an amount to be proven at trial.

/ / /

/ / /

/ / /

H. Any other relief permitted by law.

Dated: April 7, 2026

**GOODY LAW GROUP, LLP**

By: ______________________________
Greyson Goody, Esq.
Jacob Armstrong, Esq.
Attorneys for Plaintiff
VERNER BODDEN BUSH